IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

J.W., individually and on behalf                                              PLAINTIFF
of her minor son, R.W.

VS.                                                                    CAUSE NO.: 2:09CV155-M-S

DESOTO COUNTY SCHOOL DISTRICT,                                          DEFENDANTS
UNNAMED DESOTO COUNTY SCHOOL
DISTRICT EMPLOYEE, in his individual
and official capacities; COACH JOHN
STEVENSON, in his individual and official
Capacities, COACH KENNETH WALKER, in his
individual and official capacities, CITY OF
SOUTHAVEN, MISSISSIPPI, and SOUTHAVEN
POLICE SERGEANT NICHOLAS KENNEDY, in
his individual and official capacities,

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 12(B)(6) MOTION TO DISMISS**

---

# INTRODUCTION

This is an action brought by a student, R.W., by and through his mother, J.W., alleging damages incurred by R.W. as a result of an alleged illegal search of his cell phone, which had been brought onto and used while R.W. was upon school property. This brief is in support of Defendant's Rule 12(b)(6) Motion to Dismiss filed on behalf of two Defendants, City of Southaven (hereinafter "City") and Southaven Police Sergeant Nicholas Kennedy (hereinafter "Sergeant Kennedy"). R.W. was a student a Southaven Middle School (hereinafter "SMS") at the time of the alleged incident.

At all relevant times, cell phone use and possession was absolutely and strictly prohibited by SMS, as was evidenced in the SMS Handbook at Rule 2-6. R.W. pulled

out his cell phone during school hours, specifically while he was in a class supervised by his football coach, an unnamed DeSoto County Schools employee. Upon discovering R.W.'s prohibited use of his cell phone, this employee confiscated the cell phone, which was standard and well-known practice at SMS. Plaintiffs allege that this unnamed employee opened R.W.'s phone and viewed pictures that were captured on the phone. Among the photos on the phone were one of R.W. dancing in the bathroom at his home and one of another SMS student holding a BB-gun across his chest at R.W.'s home. Plaintiffs allege that, after viewing these photographs, the employee gave the cell phone to Defendant Stevenson (hereinafter "Coach Stevenson"). Coach Stevenson allegedly opened the phone to view its contents. After opening and viewing the photos on the phone, Coach Stevenson took R.W. into the office of Defendant Walker (hereinafter "Coach Walker"), the seventh grade principal at SMS. Coach Walker, after viewing the photos on the phone, asked the school resource office, Sergeant Kennedy, to view the photos, which Coach Walker showed to Sergeant Kennedy. After Coach Walker showed Sergeant Kennedy the pictures contained in the phone, and after being asked his opinion regarding the same, Sergeant Kennedy informed Coach Walker that it was his opinion that the photos depicted images of gang activity. R.W. was suspended by SMS for three days and, after a disciplinary hearing on the matter, R.W. was expelled from the school district. He was never arrested.

## **DICUSSION AND APPLICATION OF THE LAW TO THE FACTS**

### *Introduction*

As a preliminary note, it should be mentioned that Plaintiff is attempting to base several causes of action upon 42 U.S.C. § 1983. Pursuant to relevant case law, in order to

base a claim upon § 1983, the complaint must (1) allege the violation of a constitutional right and (2) allege that the violation "was committed by a person acting under color of state law." *Cornish v. Corr. Servs. Corp.,* 402 F.3d 545, 549 (5th Cir. 2005). Additionally, the Fifth Circuit has adopted a heightened pleading requirement for complaints charging violations of § 1983. The Fifth Circuit absolutely requires that complaints state specific facts upon which the § 1983 claim may stand, going further than allowing merely conclusory allegations to be plead. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). Therefore, there must be more than mere conclusory allegations stated in a Plaintiff's complaint; specific facts giving rise to the § 1983 claim must be stated and sufficiently described in the complaint.

Plaintiff has failed throughout their Complaint to allege facts sufficient to support a § 1983 claim. They have asserted only the barest of conclusions. Because they have not set forth sufficiently specific facts, Plaintiff's § 1983 claims must be dismissed.

Also, in order to survive a Motion to Dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Plaintiff must state a claim upon which relief may be granted. When considering a Rule 12(b)(6) Motion to Dismiss brought by a Defendant, it is widely known that the Court should consider the evidence in the light most favorable to the non-moving party. Regarding the facts at issue in the case at bar, even considering the facts in the light most favorable to the Plaintiff, there still has been no cause stated upon which relief may be granted, as is fully explained below, and, as such, Plaintiff's complaint against the City and Sergeant Kennedy should be dismissed.

### COUNT ONE: FIRST AMENDMENT (42 U.S.C. § 1983) (overbreadth) and COUNT SIX: ARTICLE 3, SECTION 13 OF THE MISSISSIPPI CONSTITUTION OF 1890 (Overbreadth)

In Plaintiffs' first cause of action, it is alleged that the City and Sergeant Kennedy have violated § 1983 because they have enforced regulations contained in the SMS Student Handbook, which prohibits the possession of "symbols of gangs" and "messages associated with any gang or social club". *See* Plaintiffs' Complaint at 12. Plaintiff alleges that Constitutionally protected speech is being infringed upon by this regulation implemented by SMS. Because showing the constitutional nature of the policy would dispositively relieve the City and Sergeant Kennedy from any liability, its nature will be discussed.

While a prohibition against displaying "symbols of gangs" and the like may very well be protected speech under the First Amendment under ordinary circumstances, ordinary circumstances are not at issue in this case. It absolutely should never be forgotten that there is a *middle school environment* at issue here. The United States Supreme Court has spoken clearly and unequivocally about freedom of speech issues in school settings. They have said that "the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings." *See Morse v. Frederick,* 551 U.S. 393 (2007) (*citing Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 682 (1986)). In *Fraser*, a student was disciplined for giving a lewd and inappropriate speech at a school assembly. "Had Fraser delivered the same speech in a public forum outside of the school context, it would have been protected." *Fraser,* 478 U.S. at 682-83 (*citing Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 506 (1969)). "In

4

school, however, Fraser's First Amendment rights were circumscribed 'in the light of the special characteristics of the school environment'." *See id.*

The Supreme Court has clearly stated that the school environment is exceedingly different from the normal environment when it comes to freedom of speech. Courts have said that schools are free to regulate student speech that is otherwise protected in numerous instances, such as the prohibition of the display of the Confederate flag in *A.M. v. Cash*, 08-10477 (5th Cir. 2009) (where two students were disallowed from carrying purses depicting images of the Confederate flag; the Fifth Circuit upheld this restriction) and the promotion of illicit drug use in *Morse v. Frederick*, 551 U.S. 393 (2007) (where a student unfurled a banner that read "BONG HiTS 4 JESUS" at a school function and the administration was allowed to prohibit the student from displaying this banner because it promoted illegal drug use). In Justice Alito's concurring and controlling opinion in *Morse*, he further describes the reasoning employed by the court in reaching the conclusion that the student's speech was not protected. *Morse*'s reasoning, which allowed the student to be disciplined because of his banner's message, "rested on the relative magnitude of the interest it considered to be at stake, *viz.*, prevention of the 'serious and palpable' danger that drug abuse presents to the health and well-being of the students." *See Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 768, 770 (5th Cir. 2007) (*citing Morse*, 551 U.S. 393 (2007)).

Similarly, in *Ponce*, a Fifth Circuit case, a student was suspended from his school and ordered to attend the alternative schooling program for his district for keeping a journal which contained a graphic and lengthy description of a Columbine-style attack. The journal was written so as to appear to be simply a work of fictional writing at first

blush; however, once the writings were read more closely, it became clear that the student was writing about his school and that the terrorist described was himself.  In *Ponce*, the Fifth Circuit determined that the writings were sufficient to warrant disciplining the student because they *could have possibly* posed a threat to his fellow students.  The Fifth Circuit again cited Justice Alito's opinion in *Morse* in relevant part:

> [A]ny argument for altering the usual free speech rules in the public schools cannot rest on a theory of delegation but must instead by based on some special characteristic of the school setting. *The special characteristic that is relevant in this case is the threat to the physical safety of students*.  School attendance can expose students to threats to their physical safety that they would not otherwise face.  Outside of school, parents can attempt to protect their children in many ways and may take steps to monitor and exercise control over the persons with whom their children associate.  Similarly, students, when not in school, may be able to avoid threatening individuals and situations.  During school hours, however, parents are not present to provide protection and guidance, and students' movements and their ability to choose the persons with whom they spend time are severely restricted.  Students may be compelled on a daily basis to spend time at close quarters with other students who may do them harm.  *Experience shows that schools can be places of special danger*.  *See Ponce*, 508 F.3d at 770 (*citing Morse*) (emphasis in original).

As one can readily glean from the opinion above, schools are a place and environment where, if left unchecked, numerous dangers pose very real threats to students every day.  Gangs are certainly a danger to which schools may not turn a blind eye in this day and time.  Because gangs, and the language and images advocating such, pose a serious threat to student safety, certainly schools have an absolutely overriding interest in quashing gang proliferation in public schools.

In the 2008 case of *U.S. v. Williams*, 128 S.Ct. 1830, 1838 (2008), the Supreme Court has stated that a regulation is facially invalid if it prohibits a substantial amount of protected speech.  The key phrase in this admonition is *substantial amount*.  Also, the "overbreadth must be substantial, not only in an absolute sense, but also relative to the

statute's plainly legitimate sweep." *Williams,* 128 S.Ct. at 1838. Examining the facts at hand, the children who attend SMS are not having their right to freedom of speech infringed upon by the Rules enunciated in the SMS Handbook *except as it relates to speech which is gang related*. Certainly this is not a substantial amount of speech. The only speech being regulated in this case is speech which advocates or depicts gang activity, an inherently dangerous class of speech, especially in a school environment. While this speech may be protected speech outside of the school setting, schools are given more leeway in regulating speech in order to provide for the safety of their students and to insure the integrity of their learning environment, as is seen in Supreme Court case of *Morse* and its progeny, and gang related activity certainly falls within the realm of speech which schools may prohibit.

In the case at bar, gang photographs and gang symbols are at issue. Surely advocating gang membership is no less destructive to a safe and productive learning environment than is the promotion of illegal drug use. A main recruiting tool for street gangs is the use of particular colors and symbols to promote their organization and attempt to influence young people to join their life of crime. As stated earlier, the United States Supreme Court has made clear that schools enjoy much more latitude to restrict speech than a similarly situated public entity in a normal, adult society. Because gang membership, which inherently leads to gang violence, something which can certainly bring a school system to its proverbial knees, is an enormous threat to public school systems, it should be considered analogous to the promotion of illegal drug activity, which the Supreme Court has previously stated is speech which is allowed to be curtailed in the public school system for the protection of students. If a public school system is not

allowed to ban "gang symbols", it has lost a key battle in the fight against gang influence in our schools.

Additionally, Plaintiff argues that the terms "gang symbols" and "messages associated with any gang or social club" are not sufficiently clear terms so that constitutionally protected speech and expression are being silenced in addition to unprotected speech. Surely Plaintiff realizes that gangs, by their very nature, are fluid and changing organizations. They must constantly change their symbols and other identifying characteristics in order to stay a step ahead of the law enforcement officers who spend their days fighting such crimes and organizations. Because of this, to require a more detailed term than is currently used by SMS in their Handbook would prove to be either unworkable or irrelevant. First, schools absolutely will not be able to define each and every gang symbol which could possibly be used by their students. Some are even unknown to specialized gang-fighting law enforcement. Also, listing those symbols that are known in the Handbook in their entirety would be prohibitively expensive to reproduce in their entirety and would produce an incomprehensibly large Handbook. Additionally, by the time this version of the Handbook was handed out to students and parents, the symbols identified would already be out of date because of the rapidly changing nature of existing gangs, in addition to the creation of completely new gangs with their own new symbols.

It is worth mentioning that neither City nor Sergeant Kennedy adopted the gang policy. Sergeant Kennedy is merely charged with enforcing the school district's policies. The aforementioned discussion regarding First Amendment jurisprudence in schools is relevant insofar as it shows that the school's policies are constitutionally valid. As such,

8

there is no liability for enforcing these constitutional policies. Neither the City nor Sergeant Kennedy may be held liable for enforcing said policies because there has been no violation of the First Amendment.

### COUNT TWO: FIRST AMENDMENT (42 U.S.C. § 1983) (excessive delegation) and COUNT SEVEN: ARTICLE 3, SECTION 13 OF THE MISSISSIPPI CONSTITUTION OF 1890 (Excessive Delegation)

Plaintiffs allege in Count Two that DeSoto County School District (hereinafter "DCSD") unconstitutionally delegates complete authority and discretion to law enforcement officials to determine the nature and scope of the activity prohibited. *See* Plaintiffs' Complaint at 13. However, no allegations at all are set forth against the City or Sergeant Kennedy. In fact, neither is even mentioned. Therefore, because no allegations have been made against these Defendants, a claim against them has not been stated and they should be dismissed from this count of the Plaintiff's Complaint.

### COUNT THREE: FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) (Vagueness) and COUNT EIGHT: ARTICLE 3, SECTIONS 13-14 OF THE MISSISSIPPI CONSTITUTION OF 1890 (Vagueness)

Regarding Count Three, Plaintiff alleges that the regulations adopted by DCSD in its Student Handbook are unconstitutionally vague. However, as was stated above regarding Count Two, Plaintiff makes no allegations at all against the City or Sergeant Kennedy. Therefore, because no allegations have been made against these Defendants, they should be dismissed from this count of the Plaintiff's Complaint.

### COUNT FOUR: FOURTH AMENDMENT (42 U.S.C. § 1983) (Search and Seizure) and COUNT NINE: ARTICLE 3, SECTION 23 OF THE MISSISSIPPI CONSTITUTION OF 1890 (Search and Seizure)

Plaintiffs allege that the City and Sergeant Kennedy "are liable to Plaintiff R.W. for the unlawful search of R.W.'s cell phone". *See* Plaintiffs' Complaint at 14. The City

and Sergeant Kennedy would respectfully show unto this court, however, that Sergeant Kennedy did not conduct the search at issue. The search itself was conducted by DCSD employees. Sergeant Kennedy simply identified pictures, which were shown to him on R.W.'s cell phone, as being gang related pictures. Sergeant Kennedy did not perform the actual search of R.W.'s personal property. The search itself was performed by school officials, who undoubtedly have a right to do so under *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) and *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. ___ (2009). The cause alleging a Fourth Amendment violation is relevant to the Motion and Brief in Support of DCSD and its officials only, as they were the actors who completed the "search" of the cell phone. A discussion of whether the search of the phone was permissive is irrelevant to the City and Sergeant Kennedy. Because Sergeant Kennedy did nothing further than identify a photo shown to him by another actor, he did not engage in a search at all and therefore has not violated R.W.'s right to be free from unreasonable search and seizure and cannot be held liable for such.

Alternatively, should this Court determine that Sergeant Kennedy was involved in the search at issue, there still has been no Constitutional violation, and, since there is absolutely no right to possess a cell phone while on school property, no deprivation of liberty in the form of an arrest ever occurred. To put it simply, there has been 'no harm, no foul', in regard to Sergeant Kennedy. Sergeant Kennedy simply identified the photo located on the cell phone as being gang related, after being asked. Sergeant Kennedy did not, and could not have, arrested R.W. for anything at all, as R.W. had violated no law, only clearly established school policy. R.W. was not deprived of his liberty and, thus, there were no damages arising from any violation which Sergeant Kennedy could be

found to have committed. Also, even if Plaintiff alleged that his punishment was somehow caused by Sergeant Kennedy, Plaintiff is unable to overcome the fact that R.W., by simply using his cell phone at school, had committed a punishable offense. Irrespective of any involvement or non-involvement by Sergeant Kennedy, R.W. would have been punished by SMS.

Because Sergeant Kennedy has committed no Constitutional violation, or alternatively, because R.W. suffered no deprivation of his liberty at the hands of Sergeant Kennedy because he was not arrested, Plaintiffs' Complaint should be dismissed again him. There is subsequently no basis for any liability on the part of the City, and as such, both entities are entitled to dismissal of this complaint against them.

*COUNT FIVE: FOURTEENTH AMENDMENT (42 U.S.C. § 1983) (Substantive Due Process) and COUNT TEN: ARTICLE 3, SECTION 14 OF THE MISSISSIPPI CONSTITUTION OF 1890 (Substantive Due Process)*

Though it is unclear from Plaintiffs' complaint exactly what actions are the alleged basis for a substantive due process claim, Plaintiffs use the language "arbitrary state conduct". *See* Plaintiffs' Complaint at 15. The United States Supreme Court has said that a substantive due process claim involves posing two inquiries. First of all, a complaining plaintiff must assert the deprivation of a "fundamental right[] and libert[y] 'deeply rooted in this Nations history and tradition'." *See Washington v. Glucksberg,* 521 U.S. 702 (1997) (*citing Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)). Secondly, a court must require a "careful description" of the right which is being characterized as fundamental. *See Glucksberg*, 521 U.S. at 721.

In the case at bar, it is exceedingly unclear what Plaintiffs are alleging short of their statement of "arbitrary state conduct". *See* Plaintiff's Complaint at 15. One can

11

only guess as to what the right being brought to issue is. Certainly Plaintiff has not sufficiently stated a case for violation of substantive due process under *Glucksberg* and its progeny by merely alleging "arbitrary state conduct". More is absolutely required. A violation of a fundamental right must be alleged and described. Neither a sufficient allegation nor a sufficient description has been offered in this case. Because Plaintiff has failed to sufficiently state a claim alleging a violation of substantive due process, as is required by the United States Supreme Court under *Glucksberg*, this claim should not be allowed to stand and should be dismissed.

### *QUALIFIED IMMUNITY PROTECTS SERGEANT KENNEDY*

As has been explained above, Sergeant Kennedy has taken no actions which would allow a claim to stand against him by R.W. However, should this court find otherwise, Sergeant Kennedy is still protected by the doctrine of qualified immunity. Pursuant to the recent mandates set forth in the 2009 United States Supreme Court case of *Pearson v. Callahan*, 555 U.S.____ (2009), a decision concerning qualified immunity involves, at the court's discretion, either the traditional two-step procedure announced in *Saucier v. Katz*, 533 U.S. 194 (2001), or a one step model enunciated in *Pearson*. Under *Saucier*, a court must first ask whether the facts set forth by the Plaintiffs sufficiently described a violation of a constitutionally protected right. Secondly, the court must decide whether, if there has been a violation of a constitutional right, "the right at issue was 'clearly established' at the time of defendant's alleged misconduct. *See Pearson, (citing Saucier*, 533 U.S. at 201). Under the *Pearson* approach, a court is able to simply decide whether the right at issue was clearly established, thus allowing the court to


12

refrain from expending scarce judicial resources to determine extremely fact intensive questions concerning whether a constitutional right is indeed at issue.

In the case at hand, it is clear that Sergeant Kennedy is entitled to qualified immunity for any actions taken in the course of the relevant facts at hand. Because qualified immunity is a tool which allows "insubstantial claims against government officials [to] be resolved prior to discovery", Sergeant Kennedy should be immediately dismissed from this complaint. *Anderson v. Creighton,* 483 U.S. 635, n. 2 (1987). When qualified immunity is relevant, a case should be immediately dismissed as to that defendant, long before the case proceeds to trial. "Because qualified immunity 'is an immunity from suit rather than a mere defense to liability…it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 129 S.Ct. (*citing Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

It is irrelevant which process, either the *Saucier* approach or the new *Pearson* approach, this Honorable Court chooses to employ in this case. Under either approach, Officer Kennedy is entitled to qualified immunity and should be dismissed from this complaint immediately. There is no clearly established law which would put Sergeant Kennedy on clear notice that identifying a picture from a student's open cell phone as being gang related would constitute a Constitutional violation. Therefore, under *Pearson*, because there has been no violation of clearly established law, Sergeant Kennedy is entitled to qualified immunity for his actions taken as a Southaven Police Officer. Should this Court follow the *Saucier* approach, and ask first whether there has been a constitutional violation and then answer the question of whether this right was sufficiently clearly established so as to put governmental actors on notice of its existence,

the same analysis from the *Pearson* approach above will inevitably be employed. Whether or not this Court finds that there was a violation of a Constitutional right, any right at issue certainly has not been clearly established sufficient to put Sergeant Kennedy on notice of its existence, thus causing him to lose his immunity from suit under qualified immunity.

Hence, regardless of which approach this Court determines is the best to use, Sergeant Kennedy is entitled to qualified immunity and should be dismissed from this suit immediately and certainly prior to suit, as the United States Supreme Court has mandated under *Mitchell*.

Also, it should not be forgotten by this Honorable Court that it is a direct and absolute violation of school policy for any student to possess or use a cell phone while on school property. Therefore, there should be absolutely no expectation of privacy in an item which is considered contraband when it is used in violation of school rules.

## *THE CITY OF SOUTHAVEN IS NOT VICARIOUSLY LIABLE FOR THE ACTIONS TAKEN BY ITS EMPLOYEE, SERGEANT KENNEDY*

The Plaintiffs, in addition to alleging violations against Sergeant Kennedy himself in his official and individual capacities, has also alleged claims against the City of Southaven. However, all claims against the City should be dismissed pursuant to the Supreme Court's decision in *Monnell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Under *Monnell*, it is clearly stated that "[i]n order to hold a municipality liable under § 1983 for the misconduct of one of its employees, a plaintiff must allege that the municipality caused the constitutional violation through its policies or customs." *See id.* at 694. In the Fifth Circuit case of *Kohler v. Englade*, 470 F.3d 1104 (5th Cir. 2006), the court dismissed a plaintiff's complaint against a City because of the failure to allege that

the constitutional violation has occurred as a result of the municipality's policies of customs.

In the case at bar, just as the case in *Kohler,* it is uncontroverted the Plaintiff has not alleged that the constitutional violation occurred as a result of the City's policies or customs. Because the Plaintiff has failed to meet the requirements enunciated in *Monnell* by the United States Supreme Court, the City of Southaven must be dismissed from this Complaint.

## **CONCLUSION**

Even though the Plaintiff has alleged numerous causes of action against the Defendants City of Southaven and Sergeant Kennedy, none of these should be allowed to stand against either of these Defendants. To tackle the simplest issue first: the City of Southaven must be dismissed from this action, as the Plaintiff has unquestionably failed to meet the requirements set forth under *Monnell* and the Fifth Circuit's ruling in *Kohler* because they have failed to allege that any constitutional violation has occurred which stemmed from the City's policies or customs. A claim against the City of Southaven may not stand.

Additionally, none of the causes brought against Sergeant Kennedy are sufficient to pass muster under a Motion to Dismiss. Alternatively, Sergeant Kennedy is entitled to qualified immunity. Many causes of action alleged by the Plaintiffs fail to mention *any act at all* taken by Sergeant Kennedy. They do not even mention his name. Additionally, those causes which do name Sergeant Kennedy must be dismissed because of fatal flaws in their reasoning. Because the Plaintiff has failed to state a claim upon which relief may

be granted pursuant to Federal Rules of Civil Procedure 12(b)(6), the complaint against the City of Southaven and Sergeant Kennedy should be dismissed.