**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**J.W. INDIVIDUALLY AND ON BEHALF OF HER MINOR SON, R.W.** **PLAINTIFFS**

**VS.** **CIVIL ACTION NO.: 2:09CV155-M-S**

**DESOTO COUNTY SCHOOL DISTRICT, UNNAMED DESOTO COUNTY SCHOOL DISTRICT EMPLOYEE, in his individual and official capacities, COACH JOHN STEVENSON, in his individual and official capacities, COACH KENNETH WALKER, in his individual and official capacities, CITY OF SOUTHAVEN, MISSISSIPPI, and SOUTHAVEN POLICE SERGEANT NICHOLAS KENNEDY, in his individual and official capacities** **DEFENDANTS**

**REPLY MEMORANDUM OF DEFENDANTS, STEVENSON AND WALKER IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT/ QUALIFIED IMMUNITY**

COME NOW DEFENDANTS above named, and submit this, their Reply Memorandum in Support of Their Motions for Summary Judgment/Qualified Immunity. Whether one uses the old two-step process in deciding whether or not Defendants are entitled to qualified immunity (*Saucier v. Katz*, 533 U.S. 194 (2001) or the more recent one-step process (*Pearson v. Callahan*, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) the primary question is whether or not the Defendants' conduct violated a clearly established right of R.W. A defendant is subject to liability under either standard only if the right allegedly violated was clearly established at the time of the action taken by the defendant. *Droussea v. Haugen*, 125 S.Ct. 596, 599, 162 L.Ed.2d 583 (2004). Addressing whether rights are clearly established requires one to analyze whether Defendants' acts were such that all reasonable officials in their position, and under the circumstances would

have known that their conduct was violative of R.W.'s rights. *Blackwell v. Barton*, 34 F.3d 298 (5th Cir. 1994). Even a showing that R.W.'s rights were violated (which is denied) is insufficient to deny qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Addressing that issue in the case *sub judice* clearly demonstrates that these Defendants are entitled to qualified immunity.

It is admitted by Plaintiff that R.W. violated a school rule of which R.W. had knowledge by taking his cell phone to school and using it in school. Declaration of R.W., ¶5, Doc. No. 37-2, Plaintiff's Memorandum pp. 1, 2, Doc. No. 38. Plaintiff recognizes confiscation as being authorized by Rule 2-6 for violation of the rule. Plaintiff's Memorandum p. 13, Doc. No. 38.

In his Declaration, R.W. asserts that an unnamed school official confiscated R.W.'s cell phone, which R. W. alleges was closed when presented to the unnamed official, and that the unnamed official "opened" the cell phone and viewed photographs displayed thereon. It is not alleged that the unnamed official did anything other than open the allegedly closed cell phone. Declaration of R. W., ¶7, Doc. No. 37-2. R.W. then asserts that the unnamed official handed the **open** cell phone to Defendant Stevenson. R. W. Declaration, ¶7, Doc. No. 37-2. As of that moment, Defendant Stevenson had neither confiscated nor "opened" the cell phone. R. W., in his Declaration goes further, however, and states "I believe" Stevenson had to depress a button to reactivate the screen. R.W. Declaration ¶9, Doc. No. 37-2. It is important to note that R.W. makes such an assertion in less than positive terms. It is alleged then that Stevenson closed the cell phone and brought it to Defendant Walker who allegedly re-opened the cell phone and looked at the photographs being displayed thereby. Declaration of R.W., ¶¶10, 11, Doc. No. 37-2. These are the "facts" asserted by R.W. Though Defendants dispute R.W.'s assertions, it is

respectfully submitted that taking as true everything asserted by R.W., Defendants nonetheless are entitled to qualified immunity.

According to the Declaration of R.W., R.W.'s cell phone had already been opened by one other than the Defendants (an unnamed school official), and the photographs depicted on the opening screen of the cell phone had already been observed by one other than these Defendants, and further, the cell phone had been passed along by that unnamed official in its "open" state. Under similar circumstances, would law enforcement officers be denied qualified immunity if a box containing drugs was taken from a suspect by someone else, and tendered to the law enforcement officers in its "open" status? Would the law enforcement officer to whom the open box of drugs is tendered be deemed to have violated the rights of the owner of the box? Whether, under those circumstances, the drugs contained in the box would be admissible in a criminal trial of the box's owner, such events would not subject the officer to whom the box was tendered to civil liability. Would anything change if the initial officer to whom the open box was tendered replaced the top on the box and handed it to another law enforcement office who removed the top of the box? Essentially the same facts are presented by the claims of the Plaintiff in the case *sub judice*.

If opening of the cell phone constituted a "search," then the "search" was conducted by one other than these Defendants. Further, since the photographs were revealed to a school official prior to any involvement of these Defendants, the photographs were already "public" and "in plain view."

It must be recognized that this is not a case where school officials randomly searched students to determine if they had cell phones. The pertinent events which are the subject of this case occurred only after R.W., in plain view, admittedly violated a known school rule by using

his cell phone at school. It is clear from the assertions of Plaintiff that the photographs which Plaintiff contends were the result of the "search" were photographs that automatically appeared upon the cell phone screen when the cell phone was opened. These photographs were not deeply imbedded in the inner workings of the cell phone, accessible only through an elaborate retrieval process involving passwords. The photographs were visible simply upon opening of the cell phone and the performance of no other function. In fact, if the cell phone were already open (which R. W. admits was the case when the cell phone was presented to Defendant Stevenson) then the photographs were already visible without performance of any physical function whatsoever. It is within this context that the qualified immunity issue must be addressed. In summary, for qualified immunity purposes, assuming as true everything asserted by Plaintiff, and established by R. W.'s Declaration, the question presented is whether or not there was clearly established law that prohibited school officials from viewing photographs on the "opening screen" of one's cell phone, which cell phone was knowingly used at school in violation of school rule.

> "In order for the law to be clearly established as of the date of the incident, the law must 'truly compel' (not just suggest or allow or raise a question about) the conclusion. . . that what the defendant is doing violates federal law in the circumstances."

*Pendleton v. Fassett*, 2009 U.S. Dist. LEXIS 78322 (W.D. Ky. Sept. 1, 2009).

Plaintiff has not cited any school cases prohibiting a school official from engaging in the conduct alleged by Plaintiff in the case *sub judice*. Specifically, Plaintiff has failed to cite any case holding a school official to have violated a student's rights when a school official "opened" or received an already "open" cell phone that was confiscated because of the student's violation of a school rule prohibiting use of a cell phone at school. Hence, there was no law clearly declaring that the alleged conduct of these Defendants violated R.W.'s rights.

The case cited by Plaintiff regarding cell phones at school is *Klump v. Nazareth Area School District*, 425 F.Supp.2d 622 (E.D. Pa. 2006). First of all, *Klump* is not a decision of the United States Supreme Court, the Fifth Circuit Court of Appeals, or any Mississippi court. Secondly, the facts in *Klump* are drastically different than the facts presented by the case *sub judice*. In *Klump* school officials not only confiscated the student's cell phone, but the school officials then actively utilized that cell phone to call nine other students to see if those students were violating the school's cell phone policy. The school officials also utilized the confiscated cell phone to access text messages and voice mails contained on the cell phone. They further conversed with the student's brother by using the Instant Messaging feature on the confiscated cell phone without identifying themselves. It was only upon those facts that the court concluded that the defendants were not entitled to qualified immunity. It is obvious from the decision, however, that the court was relying upon the extraordinary actions taken by the school officials in utilizing the cell phone, not upon facts akin to those presented by the case *sub judice.* In fact, in reaching its decision the *Klump* Court stated:

> "Here, Defendant Kocher, was justified in seizing the cell phone, as Plaintiff Christoper Klump had violated the school's policy prohibiting use or display of cell phones during school hours. **In calling other students, however, Defendants Grube and Kocher were conducting a search to find evidence of other students' misconduct which they may not do** under the standard articulated above." (Emphasis added).

It is, therefore, clear from the foregoing that the *Klump* Court denied qualified immunity based upon the fact that the defendants actively utilized the confiscated phone to call other students in an effort to uncover evidence of other students' misconduct. Had the mere confiscation and "search" of the cell phone in *Klump* been sufficient to deprive the *Klump* defendants of qualified immunity, then there would have been little reason for the court to have elaborated on all of the other conduct of the defendants. One reading *Klump* would logically conclude that one may not

utilize a confiscated cell phone for all of the purposes for which the confiscated cell phone was utilized in *Klump*, but one would have to strain to interpret *Klump* to prohibit the opening or receiving an already open cell phone (and nothing more) when that cell phone had been confiscated for admitted violation of a known school rule.

Plaintiff has failed to cite any U. S. Supreme Court case, Fifth Circuit case, or Mississippi case that would impart clearly to Defendants that opening or receiving an already open confiscated cell phone which had been utilized in violation of school rule, violates the rights of the owner of that cell phone. Despite the absence of such case law in favor of the Plaintiff's position, there was, at the time of the incident, abundant law which would have provided comfort to the Defendants that the actions they allegedly took would not have been violative of R.W.'s rights. Decisions of the courts clearly communicated to these Defendants that searches of students at school are considered on a different, more relaxed, basis than searches in non-school settings. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). These Defendants had available to them clear precedent from the United States Supreme Court advising them that student searches meet the "reasonableness" standard when "the student has violated, or is violating either the law or the rules of the school." *T.L.O.*, *supra*. Further, Defendants had available to them a pronouncement from the Mississippi Supreme Court advising "[i]ndicia of reasonableness are the rules regulating possession of contraband in defining items one may not bring to school." *S.C. v. State of Mississippi*, 583 So.2d 188 (Miss. 1991). Also available at the time was the following verbage in *United States v. Carrol*, 537 F.Supp.2d 1290, 1299 (N.D. Ga. 2008).

> "The Court is not convinced that Carrol had a reasonable expectation of privacy in the contents of the Blackberry's memory when he surrendered himself for arrest."

*Pendleton v. Fassett*, 2009 U.S. Dist. LEXIS 78322 (W.D. Ky. Sept. 1, 2009) also addressed the qualified immunity issue. Though the *Pendelton* Court found the action of the defendants to have been violative of plaintiff's rights, the court nonetheless found that the defendants were entitled to qualified immunity. The *Pendleton* Court specifically found *T.L.O.* was not the kind of clear law necessary to have clearly established the unlawfulness of the defendants' action in that case. The *Pendleton* Court mentioned the fact that lower courts had reached divergent conclusions regarding how the standards enunciated in *T.L.O.* apply to student searches and concluded that the lack of uniformity in the lower court decisions was enough to support qualified immunity.

Also, of import is the fact that this case deals with ever changing, rapidly developing technology. Not that many years ago, a cell phone did nothing but place and receive telephone calls. Many cell phones today do nothing more than that. Others, however, perform numerous additional functions. Technology has probably advanced more rapidly than the jurisprudence applicable thereto, thereby making it even more difficult for school officials to know with precision what they can and cannot do with devices such as R.W.'s cell phone. In fact, how were the Defendants even to know that the cell phone was capable of containing any information, i.e.; capable of performing any function other than placing and receiving telephone calls? How were the Defendants to know that merely opening the cell phone would reveal photographs, or other information? What if R.W. misplaced his cell phone, and it was found by a school official? Would the school official violate R.W.'s rights by opening the cell phone in an effort to identify to whom the cell phone belongs?

The Defendants' conduct must also be considered in view of pronouncements of the courts dealing with the extent of a student's reasonable expectation of privacy. It has been clearly

established that students have a lessened expectation of privacy in school than persons in the non-school setting. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *Vernonia School District, 47 J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Board of Education v. Earls*, 536 U.S. 822, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002). *S.C. v. State of Mississippi*, 583 So.2d 188 (Miss. 1991). The student's expectation of privacy is further lessened when the object at issue is contraband brought to school with full recognition that bringing the contraband is a violation of school rule which will result in confiscation of the contraband. One's expectation of privacy under such circumstance is limited, if not nonexistent. If one has no reasonable expectation of privacy, then one's rights are not violated under facts similar to those presented by the case *sub judice*. An analogous situation is discussed in one of the cases cited by Plaintiff, *United States v. Zavala*, 541 F.3d 562 (5th Cir. 2008). In that case (a non-school case) the court addressed the issue of reasonable expectation of privacy as to a driver's license and proof of insurance. In *Zavala* the court stated that because the law requires the operator of a motor vehicle to surrender his driver's license and proof of insurance when requested by a police officer, the driver has no reasonable expectation of privacy regarding those items when the driver is stopped for a traffic violation.

> "Because state law requires a driver operating a motor vehicle to **surrender** his driver's license and proof of insurance when asked by a police officer, that person **does not have a reasonable expectation of privacy** regarding those items after being pulled over for a traffic violation." (Emphasis added).

The foregoing establishes that one loses one's "reasonable expectation of privacy" when one has knowledge that one may be required to surrender a certain item An analogous situation exists in the case *sub judice.* School rule provided for confiscation of a student's cell phone when used by the student at school. Such a school rule is analogous to the state law in *Zavala*. Both provide

notice to an individual that the individual may lose temporary possession of an item As *Zavala* found such to defeat a claim of expectation of privacy, so also should that be the finding in connection with the R.W.'s cell phone in the case *sub judice*. Certainly, such a pronouncement in *Zavala* would not communicate to the Defendants in the case *sub judice* that their alleged actions were clearly violative of R.W.'s rights. The foregoing is particularly pertinent when taken in conjunction with the general proposition that students generally have an expectation of privacy less than that afforded the general population. *Board of Education v. Earls*, 536 U.S. 822, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2005).

The Defendants in the case *sub judice* also had available to them pronouncements of the courts addressing the "reasonableness" standard enunciated in *New Jersy v. T.L.O.*, *supra*. For instance, the status of the cell phone as school "contraband" clearly places it within a category recognized by *Mississippi Supreme Court* precedent as satisfying the "reasonableness" standard.

> "[i]ndicia of reasonableness are rules regarding possession of contraband in defining items one may not bring to school."

*T.L.O.*, itself, found the first inquiry of the reasonableness standard to be satisfied upon a showing that a student "has violated or is violating either the law or school rules." Therefore, as R. W. was admittedly violating a school rule, at the time of the incident involved in the case *sub judice,* the Defendants had United States Supreme Court precedent directly to support the actions that they are alleged to have taken.

The second step in the reasonableness inquiry involves the 'scope" of the search which involves inquiry into the degree of intrusion and the nature of the infraction. *New Jersey v. T.L.O.*, *supra*. Plaintiff has not cited a single case that suggests that the "scope" of the alleged "search" was excessively intrusive. There are cases in which excessive intrusion has been found, but those cases typically involve extraordinary personal intrusions. For instance, in *Pendleton v.*

*Fassett, supra,* the court found a search to be intrusive. That search, however, involved school officials physically touching Plaintiff, including touching, "underneath her breasts [and] . . . under the bra." Further, the *Pendleton* plaintiff was required to lift her skirt and bra, exposing her breasts. Further, the *Pendleton* plaintiff testified that the searcher put her hands in the plaintiff's pants. The *Pendleton* Court categorized such a search as one involving "a significant amount of bodily contact" and recognized that "[t]his was not a search that was limited to visual inspection." Such a case, in no way, imparted to the Defendants that opening (or receiving an already open) cell phone, without ever touching the person of the plaintiff, and merely visualizing photographs that automatically appeared constitutes a search of an unreasonable "scope". In fact, there is precedent where more intrusive student searches have been upheld, including the search in *T.L.O.* which involved a thorough search of a student's purse (a non-contraband item). If the officials in *T.L.O.* were protected from liability by searching the content of a student's purse, why would the Defendants in the instant case believe that their actions, as alleged by Plaintiff, would violate R.W.'s rights?

In summary, there existed no clearly established law sufficient to advise the Defendants that the opening of a cell phone (or receiving an already open cell phone), which cell phone had admittedly been used in violation of a known school rule was a violation of R.W.'s rights when the alleged "search" went no further than viewing photographs that automatically appeared upon the opening of the cell phone.

It must be recognized that this case is one involving not mere "possession" of a cell phone, but actual "use" in school of the cell phone contrary to school policy. It is reasonable under such circumstances for school officials to seek to determine the manner in which the cell phone was being "used" in school. One reason use of cell phones is prohibited is to prevent

cheating in school, i.e.; to prevent one student from communicating with another student who is taking a test. Therefore, the school has a legitimate interest in the purpose for which the cell phone was being "used."

Plaintiff has cited a couple of cases which are not truly supportive of Plaintiff's position, *United States v. Zavala*, 541 F.3d 562 (5th Cir. 2008) and *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007). Neither case involves a school search. Further, in *Zavala* the cell phone which was at issue was not itself "contraband", whereas in the case *sub judice* R.W.'s cell phon, itself, was "contraband," barred from school by school rule, which property was subject to confiscation. In *Finley,* the Fifth Circuit actually upheld search of the *Finley* defendant's cell phone (including a search of the cell phone's call records and text messages). In fact, the *Finley* case quoted decisions of other courts supporting the right of law enforcement officers, at the time of arrest, to search not only for weapons and instruments of escape, but also "without any additional justification" to search for evidence of the arrestee's crime, concluding that such a right to search extends to containers found on the arrestee's person.

Plaintiff suggests that additional discovery is needed (1) to determine whether or not Defendant Stevenson was the initial individual to whom R.W. relinquished his cell phone, and (2) to determine whether or not Stevenson or Walker were involved in the adoption of the school "gang policy."

With respect to whether or not Stevenson was the person to whom R.W. handed his cell phone, one need look no further than the Complaint and R.W.'s Declaration to ascertain with clarity that R.W. differentiates between the "unnamed" school official to whom the cell phone was handed and Stevenson, the person to whom the unnamed school official handed R.W.'s cell phone. The Declaration of R.W. completely ends that inquiry. Further, R.W.'s differentiation

between the individual to whom the cell phone was handed, and Stevenson is confirmed by the Affidavit of Stevenson Stevenson Affidavit, ¶6. Plaintiff's request to conduct discovery to explore whether or not these Defendants were involved in adoption of the school "gang policy," is tenuous. These Defendants have stated under oath that they were not involved in drafting that policy. Stevenson Affidavit, ¶13; Walker Affidavit, ¶13. Plaintiff has presented no competent proof to the contrary. Further, the Court can take notice that adoption of school policy is typically the function of the school board, not mere employees of the school district. If Plaintiff has any competent proof whatsoever to refute the content of Stevenson's and Walker's Affidavits, then Plaintiff should present such proof rather than simply suggest that the issue needs to be the subject of discovery, without submitting to the Court any evidence that would tend to suggest that there might be discoverable evidence to support such a claim.

Plaintiff has done little more than request the Court to defer decision of the issue presented by this motion to permit Plaintiff to go on a completely blind "fishing expedition" in hopes that something will be discovered that could serve to contradict the Defendants' Affidavits, and R.W.'s Declaration. Such is not a sufficient basis for deferral of action upon this motion.

## CONCLUSION

Though Defendants deny that they "searched" R.W.'s cell phone, even if the Defendants did precisely as alleged by Plaintiff, such does not constitute an impermissible search and certainly does not serve to defeat qualified immunity.

This the 23rd day of April, 2010.

RESPECTFULLY SUBMITTED,

MITCHELL, McNUTT & SAMS, P.A.

BY: /s/Wendell H. Trapp, Jr.
Attorneys for Defendants
DeSoto County School District,
Coach John Stevenson, and
Coach Kenneth Walker
Wendell H. Trapp, Jr.
Mississippi Bar # 8263

Mitchell, McNutt & Sams, P.A.
508 Waldron Street
Post Office Box 1200
Corinth, Mississippi 38835-1200
Phone: (662) 286-9931
Fax: (662) 286-8984
*e-mail: wtrapp@mitchellmcnutt.com*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**kbennett@aclu-ms.org**
Kristy L. Bennett
American Civil Liberties Union of Mississippi
P. O. Box 2242
Jackson, MS 39225

**rshuford@aclu.org**
Reginald T. Shuford
American Civil Liberties Union Foundation
Racial Justice Program
125 Broad Street – 18th Floor
New York, N. Y. 10004

**rhayes@rohalaw.com**
Robert E. Hayes, Jr.
Rozier Hayes, PLLC
5740 Getwell Road
Building 9, Suite A
Southaven, MS 38672

This the 23rd day of April, 2010.

/s/ Wendell H. Trapp, Jr.
WENDELL H. TRAPP, JR.