### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION

**J.W., individually and on behalf of her minor son, R.W.**　　　　　　**PLAINTIFFS**


**V.**　　　　　　　　　　　　**CIVIL ACTION NO.: 2:09-cv-00155-MPM-DAS**


**DESOTO COUNTY SCHOOL DISTRICT, UNNAMED
DESOTO COUNTY SCHOOL DISTRICT EMPLOYEE, in his individual
and official capacities, COACH JOHN STEVENSON in
his individual and official capacities, COACH KENNETH WALKER, in his
individual and official capacities, CITY OF SOUTHAVEN, MISSISSIPPI,
and SOUTHAVEN POLICE SERGEANT KENNEDY,
in his individual and official capacities**　　　　　　**DEFENDANTS**


### <u>ORDER</u>

This cause comes before the court on the motion of the individual defendants and the City of Southaven to dismiss and/or for summary judgment, pursuant to Fed. R. Civ. P. 12 and 56. Plaintiff J.W., individually and on behalf of her minor son R.W., has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motions are well taken and should be granted. The Desoto County School District has not sought dismissal from this case, and the court concludes, for the reasons stated below, that the allegations against it will likely be considered by a jury.

This is a school disciplinary case in which plaintiff seeks recovery against municipal and individual defendants under the United States and Mississippi constitutions for an allegedly unlawful expulsion received by her son R.W., who was then a seventh-grader at Southaven Middle School (SMS) in DeSoto County. Plaintiff's expulsion arose from an August 15, 2008

1

incident in which he was caught using his cell phone on school grounds.  Although plaintiff

acknowledges that R.W. was aware that DeSoto County School District Discipline Rule 2-6

prohibited him from possessing or using a phone at school, he nevertheless opened his cell phone

while in class to retrieve a text message from his father.

R.W. was observed using the cell phone by a school district employee, and plaintiff

describes the ensuing events as follows in her brief:

> Upon discovering R.W. using the cell phone, an unnamed DeSoto County School
> District employee [later identified as Stephen Coley Stafford] asked R.W. for it.
> R.W. closed the phone and handed it to the teacher.  Although he lacked any
> suspicion of further wrongdoing by R.W., Unnamed Defendant opened the phone
> to review the personal pictures stored on it and taken by R.W. while at his home.
> Several photographs stored on the phone depicted R.W. dancing in his home
> bathroom and one photograph, also taken in the bathroom, showed B., another
> SMS student, holding a B.B. gun.  After viewing these photographs, Unnamed
> Defendant gave the cell phone to Defendant Stevenson, who pressed a button on
> the phone to view its contents, as the screen had gone dark.

R.W. was then ordered into the principal's office, where the contents of the cell phone landed

him in considerably more trouble.  Plaintiff describes these events thus:

> Defendant Stevenson took R.W. into the office of Defendant Walker, the seventh
> grade principal at SMS, who opened the phone and examined the photographs.
> Defendant Southaven Police Sergeant Nicholas Kennedy was present in the office,
> and also opened the phone and examined the photographs.  Defendant Walker and
> Defendant Kennedy accused R.W. of having "gang pictures,"  and Defendant
> Walker issued a suspension notice to R.W. pursuant to Discipline Rule 5-3, which
> prohibits students from "wearing or displaying in any manner on school property .
> . . clothing, apparel, accessories, or drawings or messages associated with any
> gang . . . associated with criminal activity, as defined by law enforcement
> agencies."

R.W.'s actions were considered at a disciplinary hearing on August 21, 2008.  Plaintiff's

complaint alleges that, at the hearing, Southaven Police Department Sergeant Kennedy, a

defendant in this case, informed the Hearing Officer that "he recognized the gang signs in R.W.'s

2

digital photographs and that he knew the student who was holding a BB gun in one of the photos." The complaint further alleges that R.W.'s seventh-grade principal Kenneth Walker, also a defendant in this case, informed Hearing Officer that, in his view, R.W. "was a threat to school safety."

The testimony of these two witnesses appeared to carry substantial weight at the hearing. The Hearing Officer issued an order suspending R.W. with a recommendation of expulsion, and the plaintiff appealed this ruling to the DeSoto County Board of Education, which affirmed the order and expelled R.W. for the remainder of the 2008-2009 school year. Plaintiff alleges that, as a result of R.W.'s expulsion, he was "forced to enroll in Oakhaven Middle School in Memphis" which she describes as "a school plagued by a serious gang problem." Feeling aggrieved, plaintiff filed the instant action in this court. Defendants have presently moved to dismiss or for summary judgment, arguing that there is no genuine issue of fact regarding plaintiff's right to recover against them.

There are municipal and individual defendants in this case, and it is crucial to distinguish between the two since differing legal standards and procedural rules apply to each.[1] With regard to the individual defendants, qualified immunity shields government officials performing discretionary functions from individual liability for civil damages "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known."

---

[1]It is also important to recognize that, while the City of Southaven has sought dismissal from this case, the Desoto County School District has not done so. This fact has resulted in some confusion in the briefing, since both parties have sought to use the City of Southaven as a proxy of sorts to address the legality of the school district's policies and actions in this case. As explained below, however, the City of Southaven's sole role in this case is as the employer of Officer Kennedy, and it seems clear to this court that this defendant is not liable for the Desoto County School District's policies and actions.

*Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001).  Stated more pointedly, qualified immunity generally protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Qualified immunity is "an immunity from suit rather than a mere defense to liability," and as a result, the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

As to plaintiff's claims against the municipal defendants, it is well established that a local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Monell  v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 680, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  To establish municipal liability under § 1983, the plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).  Assuming that a municipal policy or custom is demonstrated, the municipal defendants may be held liable for their own constitutional violations, even absent a showing that the constitutional rights in question were "clearly established."

Having noted the applicable legal standards, the court would next acknowledge the obvious fact that it is dealing with actions taken by local school officials.  It is a great leap from the principal's office to the federal courthouse, and, in order to invoke federal jurisdiction, plaintiffs are required to demonstrate fact issues indicating not merely that they may have gotten

a "raw deal," but that their constitutional rights may have been violated.   This court's limited

role in reviewing the decisions of school officials was set forth by the Supreme Court as follows:

> It is not the role of the federal courts to set aside decisions of school
> administrators which the court may view as lacking a basis in wisdom or
> compassion. . . . § 1983 does not extend the right to relitigate in federal court
> evidentiary questions arising in school disciplinary proceedings or the proper
> construction of school regulations. The system of public education that has
> evolved in this Nation relies necessarily upon the discretion and judgment of
> school administrators and school board members, and § 1983 was not intended to
> be a vehicle for federal court correction of errors in the exercise of that discretion
> which do not rise to the level of violations of specific constitutional guarantees."

*Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992 (1975)

   With the foregoing authority in mind, the court will first address plaintiff's claim that

Desoto County School District employees acted contrary to the Fourth Amendment in viewing

the contents of R.W.'s cell phone after they had seized it.   Specifically, plaintiff argues that:

> While the phone itself was contraband, the pictures were personal and expressive
> in nature and taken at home, and were therefore protected by the Fourth
> Amendment. . . .   No school rule gave R.W. notice that by bringing his phone to
> school, his personal information would be subject to search by school officials.

In the court's view, plaintiff has failed to establish that any defendant in this case might be liable

for a Fourth Amendment violation.   In so concluding, the court notes that plaintiff has no viable

Fourth Amendment claims against the City of Southaven, since there is no evidence that the

contents of R.W.'s phone were searched pursuant to an official city policy.[2]   Accordingly,

plaintiff's only hope to recover for her Fourth Amendment claims is to establish liability against

---

[2]It does not appear that plaintiffs have valid claims Fourth Amendment claims against the
Desoto County School District either, for this same reason.  That is, there appears to be no
evidence that plaintiff's phone was searched pursuant to a district policy.  The school district has
not filed a motion to dismiss, however, and the court will therefore not issue a ruling on this
issue.

5

individual defendant(s).  To reiterate, however, the individual defendants have the additional

protection of the qualified immunity defense, which places the burden on plaintiff to demonstrate

that they violated "clearly established  rights of which a reasonable person would have known."

*Id.*

In order to be "clearly established" for purposes of qualified immunity, "[t]he contours of

the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d

523 (1987).  "[A]n official does not lose qualified immunity merely because a certain right is

clearly established in the abstract."  Rather, officials should receive the protection of qualified

immunity "unless the law is clear in the more particularized sense that reasonable officials should

be 'on notice that their conduct is unlawful.' " *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir.

2004).

A review of applicable U.S. Supreme Court authority reveals that, not only was the search

in this case not contrary to "clearly established" law; that law is actually quite favorable to the

individual defendants in this case.  Importantly, the Supreme Court has emphasized that "[t]he

school setting ... requires some modification of the level of suspicion of illicit activity needed to

justify a search," including a relaxation of the probable cause standard which ordinarily applies to

searches without a warrant. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 742 (1985).  In

considering the applicability of the Fourth Amendment to school officials, the Supreme Court in

*T.L.O.* wrote as follows:

> We join the majority of courts that have examined this issue in concluding that the
> accommodation of the privacy interests of schoolchildren with the substantial
> need of teachers and administrators for freedom to maintain order in the schools

6

does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v. Ohio*, 392 U.S., at 20, 88 S.Ct., at 1879; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place."

*Id.*

In assessing the reasonableness of the defendants' actions under *T.L.O.*, a crucial factor is that R.W. was caught *using* his cell phone at school. Desoto County School District's Rule 2-6 lists the "[p]ossession of electronic equipment/device (beepers, telephone, etc.) without prior approval of the administration" as a Level II offense, with a maximum punishment of three days suspension. It is thus apparent that the phone constituted contraband when it was brought on campus, and R.W. greatly increased his chances of being caught with that contraband (and of being suspected of further misconduct) when he elected to use it on school grounds. Upon witnessing a student improperly using a cell phone at school, it strikes this court as being reasonable for a school official to seek to determine to what end the student was improperly using that phone. For example, it may well be the case that the student was engaged in some form of cheating, such as by viewing information improperly stored in the cell phone. It is also true that a student using his cell phone at school may reasonably be suspected of communicating with another student who would also be subject to disciplinary action for improper cell phone usage.

There is some dispute regarding whether R.W.'s cell phone was open or closed at the time it was searched by various defendants, but, even assuming that it was closed, the court

concludes that the search in this case was justified at its inception.   The court further concludes that the search itself was "reasonably related in scope to the circumstances which justified the interference in the first place."  More importantly, there is clearly no valid argument that the search in this case was contrary to "clearly established" law, so as to subject the individual defendants to liability under the qualified immunity standard.  The fact that this court, after having researched nationwide authority on this issue, is unable to determine that the search in this case was unlawful clearly supports a conclusion that a school teacher lacking legal training should not be forced to defend himself at trial for his split-second decision in this regard.

In opposing defendants' motions, plaintiff relies upon *Klump v. Nazareth Area School Dist.*, 425 F. Supp. 2d 622 (E.D. Pa. 2006), which is a Pennsylvania district court decision which clearly constitutes both non-binding and distinguishable authority.  In *Klump*, the high school had a policy which permitted students to carry, but not use or display, cell phones during school hours.  In declining to grant defendants' motion for qualified immunity, the court in *Klump* described the facts in that case as follows:

> On March 17, 2004 Christopher's cell phone fell out of his pocket and came to rest on his leg. Upon seeing Christopher's cell phone, Shawn Kimberly Kocher, a teacher at the high school, enforced the school policy prohibiting use or display of cell phones by confiscating the phone. These events occurred at approximately 10:15 a.m. Subsequently, Ms. Kocher, along with Assistant Principal Margaret Grube, began making phone calls with Christopher's cell phone. Ms. Kocher and Ms. Grube called nine other Nazareth Area High School students listed in Christopher's phone number directory to determine whether they, too, were violating the school's cell phone policy.
>
> Next, defendants Kocher and Grube accessed Christopher's text messages and voice mail. Finally, defendants Kocher and Grube held an America Online Instant Messaging conversation with Mr. Klump's younger brother without identifying themselves as being anyone other than the primary user of the cell phone, Christopher Klump.

*Klump*, 425 F. Supp. 2d at 630.

      *Klump* thus presented a fact pattern where the student unintentionally violated school policy by having a cell phone which was not otherwise contraband fall from his pocket.  The school officials in *Klump* appeared to use that accident as a pretext to conduct a wholesale fishing expedition into the student's personal life, in such a manner as to clearly raise valid Fourth Amendment concerns.   In this case, by contrast, plaintiff concedes that "[a]lthough aware that DeSoto County School District Discipline Rule 2-6 prohibited him from possessing or using a phone at school, R.W. opened his cell phone while in class to retrieve a text message from his father."  Plaintiff thus admits that R.W. knowingly violated school rules by even bringing his phone on school grounds, and he compounded that violation by deciding to actually use the phone at school.

      In the court's view, a student's decision to violate school rules by bringing contraband on campus and using that contraband within view of teachers appropriately results in a diminished privacy expectation in that contraband.  Moreover, the decision by the school officials in this case to merely look at the photos on R.W.'s cell phone was far more limited, and far more justified, than that taken by the school officials in *Klump*.  In light of the foregoing, the court concludes that the search of R.W.'s phone itself was not contrary to clearly established law, and the individual defendants are entitled to a dismissal of the Fourth Amendment claims against them.  The City of Southaven is likewise entitled to dismissal of any Fourth Amendment claims against it, since its sole role in this case was as the employer of Officer Kennedy.

      The court now turns to plaintiff's claims arising out of the decision to expel R.W. based on the contents of his cell phone.  While the court finds plaintiff's Fourth Amendment claims to

lack merit, it has serious concerns regarding the wisdom and legality of the school district's

decision to expel R.W. based on its subjective impressions of photographs depicting him in his

personal life.  At the same time, it must be re-emphasized that the school district has not sought

dismissal or summary judgment at this juncture.  In spite of this fact, the parties have briefed the

legality of the school district's policies and actions as if these issues were presently before the

court.  In particular, the plaintiffs argue that the City of Southaven might be held liable for

Officer Kennedy's alleged role in helping to enforce school district policy, and they seek to hold

individual defendants liable for their participation in the school district's investigation and

hearing.

In considering plaintiff's Fourteenth Amendment claims arising out of R.W.'s expulsion,

it is, once again, crucial to distinguish between the claims against the individual and municipal

defendants.  In this case, plaintiff's allegations against the two classes of defendants often seem

to work at cross purposes from one another.  Broadly stated, plaintiff appears to be pursuing two

lines of argument in this case as it relates to the decision to expel R.W.  The first is that certain

individual defendants intentionally violated R.W.'s constitutional rights by presenting false

and/or misleading testimony against him at his hearing.   The second is that the school district

violated R.W.'s Fourteenth Amendment rights by arbitrarily suspending him for an entire school

year based on the contents of his cell phone.  The court finds that the plaintiff's claims against

the school district, but not the individual defendants, have potential merit.

In spite of being afforded an opportunity to conduct discovery on qualified immunity

issues, the plaintiff has been unable to provide the court with any indication that the individual

defendants in this case did anything more than participate in good faith in her son's disciplinary

hearing.   With regard to the testimony presented at the hearing, plaintiff alleges as follows in her

complaint:

> On Thursday, August 21, 2008 Desoto County School District
> Disciplinary Hearing Officer Donald Corey convened a hearing to review RW's
> case.  The hearing was attended by RW, J.W., Defendant Walker and J.W.'s
> friend, Percy Garrett.  The hearing officer recorded the hearing.  Defendant
> Walker indicated that RW was a threat to school safety.  When J.W. asked
> Hearing Officer Corey whether Defendant Walker was a gang specialist, the
> hearing officer turned off the recording device and sent someone to search for
> Defendant Kennedy.  At no time did Defendant Walker explain how RW posed a
> threat to school safety.
>
> J.W. offered to show the photographs to Hearing Officer Corey, who
> declined to view them.  Defendant Kennedy arrived and stated that he recognized
> the gang signs in RW's digital photographs and that he knew the student who was
> holding a BB gun in one of the photos.  However, Defendant Kennedy did not
> provide any information as to what formed the basis of his belief that RW showed
> gang signs in the pictures on his cell phone.  Hearing Officer Corey imposed an
> indefinite suspension and recommended that RW be expelled from the school
> district.

Plaintiff's complaint thus alleges that Officer Kennedy represented to the Hearing Officer, with

apparent confidence, that he was familiar both with the local gang signs and with the individual

depicted holding a BB gun in plaintiff's photograph, in support of his testimony against R.W.

Plaintiff appears to suggest in her brief that Officer Kennedy is a rogue officer of sorts who set

about, for reasons which she never makes clear, to violate R.W.'s constitutional rights by

presenting false testimony against him.  While this makes an interesting theory, qualified

immunity law requires that before public officers are dragged into court to defend themselves

against serious allegations such as these, plaintiffs be able to support those allegations with

actual proof.  No such proof is present here, even though the parties were given an opportunity to

conduct discovery on this issue prior to this court's ruling today.

The closest plaintiff comes to even offering a specific allegation against Officer Kennedy is to assert that he exaggerated his experience in gang matters by representing himself as highly knowledgeable regarding gang signs. Plaintiff offers no proof that Officer Kennedy is not, in fact, knowledgeable regarding local gang matters, and it strikes this court as being far from implausible to believe that a sergeant in the Southaven Police Department would, in fact, have expertise in this regard. Indeed, Officer Kennedy has submitted an affidavit in which he asserts that he received approximately fifty hours of training in "gang awareness, including but not limited to identifying and recognizing symbols, signs and gang activity." In light of this evidence, the court sees no valid claims that Officer Kennedy violated "clearly established" constitutional rights by representing himself as being knowledgeable regarding gang matters at the hearing. Plaintiff's claims against Kennedy, as well as against his employer the City of Southaven, are therefore due to be dismissed.

Principal Walker and Coach John Stevenson are also defendants in this case, but, as with Officer Kennedy, plaintiff never comes close to setting forth a coherent theory as to why or how these defendants might have violated her son's constitutional rights by simply participating in a disciplinary hearing. Indeed, plaintiff's theory seems to be that, because she believes (with some cause) that the school district's decision to expel R.W. was unconstitutional, any defendants who offered testimony against him at the school district's hearing must have acted unconstitutionally. This is plainly insufficient to survive a qualified immunity defense. If plaintiff were even able to offer a coherent theory as to individual liability, then this court might be inclined to conduct additional discovery in this regard. It is apparent, however, that the individual defendants are

entitled to the defense of qualified immunity,[3] and their motions to dismiss will therefore be granted.

The court will thus grant all of the motions to dismiss which are presently before it, but it does not wish, in so doing, to give the mis-impression that it lacks serious concerns regarding the school district's actions in this case.  The court is troubled by the fact that R.W. somehow found himself expelled for an entire school year when the only offense he committed was the minor offense of bringing a phone on school grounds.   Under school district rules, this offense called for - at most - a three-day suspension.  It thus seems clear that R.W. was expelled based on the contents of his cell phone, rather than the fact that he brought the phone onto school grounds.  In explaining his decision to recommend expulsion, the hearing officer briefly wrote as follows:

> [C]ame before a Disciplinary Hearing Officer due to alleged violation(s) of Desoto County Board Policy were levels: 5-3 Gang signs, symbols, pictures, drawings, etc.  2-6 Possession of a cell phone. After hearing the facts of the matter, the following decision(s) were made: indefinite suspension with a recommendation of expulsion.

The hearing officer thus cited Desoto County School District's Disciplinary Rule 5-3, which provides as follows:

> Students are prohibited from wearing or displaying in any manner on school property or at school-sponsored events clothing, apparel, accessories, drawings, or messages associated with any gang or social club that is associated with criminal activity, as defined by law enforcement agencies.

It seems clear to this court that R.W. did not violate Rule 5-3, since no party alleges that he made

---

[3]It also seems likely that the individual defendants would be able to assert a common-law privilege applicable to testimony at hearings and good faith participation in investigations.  *See, e.g. Bulloch v. City of Pascagoula*, 574 So.2d 637, 642-43 (Miss. 1990).  Clearly, the law should seek to encourage individuals to participate freely in investigations and disciplinary hearings without having to worry that they will face a lawsuit for merely offering their cooperation.

gang signs "on school property or at school-sponsored events."  Rather, R.W. photographed himself in the privacy of his own home, and the Hearing Officer heard testimony that these photographs depicted him making gang signs.  Plaintiff contends that the photographs instead show R.W. dancing.

The U.S. Supreme Court has made it clear that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708 (1998).   Plaintiff argues that Rule 5-3 is unconstitutionally vague, but the portion of the statute which limits its applicability to "school property" and "school-sponsored events" seems clear enough to this court.  It appears, rather, that the school district simply misapplied its own rule in this case.   Whether this is sufficient to render its actions "arbitrary" in a constitutional sense is another matter, but this court is inclined to show considerably more deference to actions which are taken pursuant to official policy than those taken in contravention of it.  Moreover, this court is inclined to show greater deference to actions taken by teachers and school administrators to police their own schools than when they seek to police the private lives of their students.

In the court's view, it is one thing for a school to seek to prevent gang violence from erupting in its hallways by prohibiting the wearing of gang apparel or the making of gang signs at school.   It is another for a principal to, in effect, call in a student on a Monday morning and ask him to explain, under penalty of expulsion, why he was observed wearing a particular piece of clothing or seen running around with a "bad crowd" over the weekend.  The school district appeared to recognize this fact when, in drafting rule 5-3, it limited its applicability to school grounds and school events.  It is unclear to this court why the school district apparently failed to

14

follow the constitutional safeguards in its own rule in this case.

From reviewing the record, it appears that the most likely reason R.W. was expelled was the testimony of Principal Walker that he was a "threat to school safety" and the testimony of Officer Kennedy that he was likely involved in gang activity.  When this court believes that a school district has acted out of a desire to protect its students, its inclination to show deference to the school district's action is very strong.   At the same time, the facts of this case appear sufficient to severely test even this deference.  At this juncture, it at least seems arguable that R.W. was expelled based not upon anything he <u>did</u>, but rather based upon what the school district subjectively believed he <u>was</u>.[4]  Public actors step upon a very slippery slope when students are expelled on this basis, particularly if the school district's opinions in this regard are based largely upon subjective impressions of a student's private activities off school grounds.  The slope is even slippier when, as here, the school district only obtained the evidence of these activities by conducting a search which, while not unconstitutional, does tread into a constitutionally sensitive area.

The court thus has serious concerns regarding the school district's actions in this case.  At the same time, in cases where a school district acts out of a good faith concern over school safety, it is arguably entitled to a great amount of deference from federal courts.  This case thus presents two compelling interests competing with one another: a school district's desire to make its schools safer and a student's due process right to be safe from arbitrary governmental action.  It

---

[4]If the school district does intend to argue that R.W. was a threat to school safety, its task will be rendered more difficult by the fact that it was dealing with a seventh grader with no apparent criminal record.  This fact, along with the fact that R.W.'s friend was apparently depicted in photographs with a BB gun, raises the question as to whether childish posturing was depicted in the photographs.

is unclear to this court which of these two interests will ultimately prevail in this case, but, at this juncture, this court is inclined to let a jury resolve these issues.  It appears to the court that a case as difficult as this one is best left to the judgment of a jury, as the conscience of the community, and it is strongly inclined to do just that in this case.[5]

It is therefore ordered that the individual defendants' motions [29-1] to dismiss on the basis of qualified immunity are granted, as is the City of Southaven's motion to dismiss [17-1] based on the actions of Officer Kennedy.

**SO ORDERED** this 1st day of November, 2010.

 **/s/ Michael P. Mills**
**CHIEF JUDGE**
**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[5]The court suggests that the school district give serious consideration to settling this lawsuit, particularly since it appears that it misapplied its own rule in this case.  The court is confident that the school district acted with the best of intentions when it expelled R.W., but it must recognize that there are limits (including in its own rules) upon the power of school officials to police the private lives of their students.